FILED

1    TROUTMAN SANDERS LLP
     Terrence R. McInnis, Bar No. 155416
2    terrence.mcinnis@troutmansanders.com
     Ryan C. Tuley, Bar No. 198249
3    ryan.tuley@troutmansanders.com
     Thomas H. Prouty, Bar No. 238950
4    thomas.prouty@troutmansanders.com
     5 Park Plaza, Suite 1400
5    Irvine, CA 92614-2545
     Telephone:  949.622.2700
6    Facsimile:   949.622.2739

7    *Attorneys for Plaintiff*
     *Houston Casualty Company*
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12   HOUSTON CASUALTY COMPANY,   Case No.  CV09  06978  VBK

13             Plaintiff,

14        v.

15   JEFF DRAZAN, RORY                 **COMPLAINT FOR**
     O'DRISCOLL, and FRONTBRIDGE       **DECLARATORY RELIEF**
16   TECHNOLOGIES, INC.

17             Defendants.

18

19

20

21

22

23

24

25

26

27

28

2009 SEP 25  AM 10: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1022312v1

1   Plaintiff Houston Casualty Company ("HCC") brings this Complaint against

2   defendants Jeff Drazan ("Drazan"), Rory O'Driscoll ("O'Driscoll"), and

3   FrontBridge Technologies, Inc. ("FrontBridge") (collectively, "Defendants").  HCC

4   is informed and believes and therefore alleges as follows:

5   **JURISDICTION AND VENUE**

6   1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §

7   1332.  There is complete diversity between parties, and the amount in controversy

8   exceeds the sum of $75,000, exclusive of interest and costs.

9   2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) since

10  all Defendants reside in California and one or more of the Defendants resides in this

11  District.  Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) since a

12  substantial part of the events or omissions giving rise to the claims at issue occurred

13  in this District.

14  **THE PARTIES**

15  3.   HCC is an insurance company incorporated under the laws of the State

16  of Texas with its principal place of business in Texas, and as such, is a citizen of

17  Texas within the meaning of 28 U.S.C. § 1332(c)(1).

18  4.   HCC is informed and believes, and thereon alleges, that Drazan is a

19  resident of Los Angles County, California, and a citizen of California within the

20  meaning of 28 U.S.C. § 1332(a).

21  5.   HCC is informed and believes, and thereon alleges, that O'Driscoll is a

22  resident of Los Angles County, California, and a citizen of California within the

23  meaning of 28 U.S.C. § 1332(a).

24  6.   HCC is informed and believes that FrontBridge is a Delaware

25  Corporation, with its principal place of business in California, and as such is a

26  citizen of Delaware and California within the meaning of 28 U.S.C. § 1332(c)(1).

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## **INTRODUCTION**

7.      This is an action by HCC seeking declarations concerning the rights and obligations of the parties under a policy of insurance issued to FrontBridge Technologies, Inc. in connection with the lawsuit captioned *MessageOne, Inc. v. FrontBridge Technologies, Inc. and MessageRite, Inc.*, Case No. A04CA711 LY (W.D. Tex.) (the "*MessageOne* Action").

8.      Drazan and O'Driscoll assert that FrontBridge assigned them, as stockholder representatives of the former stockholders of FrontBridge, all of FrontBridge's insurance rights with respect to the claims asserted in the *MessageOne* Action.

9.      In this Complaint, HCC seeks, *inter alia*, a judgment declaring that (1) HCC has no obligation under its policy to indemnify Defendants for the settlement of the *MessageOne* Action, or satisfy the settlement of the *MessageOne* Action; and (2) that HCC had no duty to defend FrontBridge in the *MessageOne* Action.

## **FACTUAL BACKGROUND**

### **The Policy**

10.      HCC issued Professional Liability Errors & Omissions Insurance Policy No. H704-13595 to FrontBridge Technologies, Inc. for the June 22, 2004 to June 22, 2005 Policy Period (the "Policy"). Attached as Exhibit A hereto are true and correct copies of the forms and endorsements that comprise the Policy (not including the Application for the Policy, which also forms a part of the Policy). The Policy has a limit of liability for each Claim and in the aggregate, including Claim Expenses, of $5,000,000, and is subject to a $25,000 deductible per Claim, including Claim Expenses. The Policy also contains a $250,000 aggregate sub-limit of liability for Claims and Claim Expenses arising out of copyright or trademark violations. (Endorsement No. 6.)

11.      Subject to the terms and conditions as more fully set forth in the Policy, the Policy provides:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

The Company shall pay on behalf of the Insured any Loss and Claim Expenses in excess of the Deductible amount and subject to the Limit of Liability as the Insured acting in the profession described in Item 3 of the Declarations shall become legally obligated to pay for Claim or Claims first made against the Insured during the Policy Period by reason of any Wrongful Act by an Insured provided always that the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy and further provided that such Wrongful Act took place subsequent to the Retroactive Date set forth in Item 8 of the Declarations.

(Policy Section I.)

12.    The Policy defines "Wrongful Act" to include "any actual or alleged error or omission or breach of duty committed or alleged to have been committed or for failure to render such professional services as are customarily rendered in the profession of the Insured as stated in Item 3 of the Declarations." (Policy Section II.(e), as amended by Endorsement No. 7.)  Item 3 of the Declarations, as modified by Endorsement No. 1, sets forth the Named Insured's Profession as "Solely in the performance of providing Managed Messaging Services, for others for a fee."

## The *MessageOne* Action

13.    On or about October 29, 2004, MessageOne filed the *MessageOne* Action against FrontBridge and MessageRite, Inc. ("MessageRite"). On or about March 10, 2006, MessageOne filed a third amended complaint ("TAC") in the *MessageOne* Action. A true and correct copy of the TAC is attached hereto as Exhibit B.

14.    The TAC in the *MessageOne* Action states, among other things, that MessageOne provided e-mail continuity and disaster recovery services under the trademark MESSAGEONE™ (the "MessageOne Solution"). In February 2004, FrontBridge allegedly approached MessageOne seeking to resell the MessageOne Solution under its own brand. Over the next two months, FrontBridge allegedly

1  soliciting information regarding the technical aspects, pricing, margins, and other

2  trade secret and confidential information regarding MessageOne's product(s) under

3  the guise of wanting to partner with MessageOne.  MessageOne alleges

4  FrontBridge was claiming to have tested and developed its own e-mail continuity

5  product (even though that was allegedly not accurate) before FrontBridge began

6  negotiating with MessageOne in 2004.  In early April, 2004, the Parties allegedly

7  entered into a Memorandum of Understanding ("MOU") containing confidentiality

8  provisions, and began drafting and negotiating a proposed Value Added Reseller

9  Agreement ("VAR") whereby FrontBridge would resell the MessageOne Solution.

10  At the same time it was negotiating with MessageOne, FrontBridge was also

11  allegedly negotiating in secret to acquire MessageRite – a separate e-mail archiving

12  company.  Eventually, on August 30, 2004, FrontBridge allegedly announced that it

13  had acquired MessageRite and informed MessageOne that it would not go forward

14  with the deal.  As part of its efforts to compete with MessageOne, FrontBridge

15  purportedly disclosed MessageOne's confidential and trade secret information to

16  MessageRite to create a new e-mail continuity and disaster recovery product.  The

17  TAC also alleged that FrontBridge and MessageRite used Google's "AdWord"

18  program to include "MessageOne" as a trigger for a MessageRite sponsored

19  advertisement.

20  **Drazan and O'Driscoll's September 30, 2008 Demand and Lawsuit**

21  15.   HCC first received a purported notice of claim for the *MessageOne*

22  Action on October 2, 2008.  On that date, HCC's agent for purposes of notice,

23  Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP, received a letter dated

24  September 30, 2008 from Robert A. Susk, counsel for Defendants.  Mr. Susk's

25  letter asserted that Drazan and O'Driscoll were stockholder representatives of the

26  former stockholders of FrontBridge, and that FrontBridge had assigned all of its

27  insurance rights related to the *MessageOne* Action to Drazan and O'Driscoll.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

16.    Mr. Susk's September 30, 2008 letter enclosed a "proof of claim," with numerous exhibits.  According to the "proof of claim," the *MessageOne* Action settled for $7,550,000 in October 2006, and FrontBridge incurred $2,805,782.80 in defense expenses.  Mr. Susk's letter demanded that HCC pay Drazan and O'Driscoll the Policy's $5 million policy limit, and requested that HCC complete its investigation and respond within fifteen (15) days – *i.e.*, by October 15, 2008.

17.    On October 8, 2008, prior to the October 15, 2008 deadline for a response, Drazan and O'Driscoll filed an action captioned *Drazan, et al. v. Houston Casualty Co.*, No. BC399572 (Los Angeles Super. Ct.) (the "*Drazan v. HCC* Action"), alleging breach of contract and bad faith by reason of HCC's alleged failure to defend and indemnify Defendants in connection with the *MessageOne* Action.

18.    In late December 2008, Drazan and O'Driscoll entered into a tolling agreement with HCC, and dismissed the *Drazan v. HCC* Action without prejudice.  Despite the exchange of additional correspondence and materials, Drazan and O'Driscoll continue to assert that HCC was obligated to defend and indemnify FrontBridge in the *MessageOne* Action, and that HCC is obligated to pay them $5 million – the aggregate policy limits of the Policy.  HCC disputes these contentions.

## COUNT I

### (Declaratory Relief – Against All Defendants)

19.    HCC repeats and incorporates by reference the allegations in paragraphs 1 through 18 of the Complaint.

20.    Subject to the terms and conditions as more fully set forth in the Policy, the Policy provides:

> The Company shall pay on behalf of the Insured any Loss and
> Claim Expenses in excess of the Deductible amount and subject
> to the Limit of Liability as the Insured *acting in the profession*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1
2
3
4
5
6

*described in Item 3 of the Declarations* shall become legally obligated to pay for Claim or Claims first made against the Insured during the Policy Period by reason of any *Wrongful Act* by an Insured provided always that the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy and further provided that such Wrongful Act took place subsequent to the Retroactive Date set forth in Item 8 of the Declarations.

7    (Policy Section I (italics added).)

8        21.    The Policy defines "Wrongful Act" to include  "any actual or alleged

9    error or omission or breach of duty committed or alleged to have been committed or

10   for failure to render *such professional services as are customarily rendered in the*

11   *profession of the Insured as stated in Item 3 of the Declarations*."  (Policy Section

12   II.(e), as amended by Endorsement No. 7 (italics added).)  Item 3 of the

13   Declarations, as modified by Endorsement No. 1, sets forth the Named Insured's

14   Profession as "*Solely in the performance of providing Managed Messaging*

15   *Services, for others for a fee.*"  (Italics added.)

16       22.    The *MessageOne* Action does not allege an error, omission or breach

17   of duty on the part of FrontBridge solely in providing or failing to provide Managed

18   Messaging Services, for others for a fee.  The acts for which plaintiff complains in

19   the *MessageOne* Action were not performed or allegedly performed solely (if at all)

20   by FrontBridge while acting in the profession of providing Managed Messaging

21   Services to others, but rather were allegedly performed as a competitor seeking to

22   gain access to and profit upon confidential and proprietary information of

23   MessageOne.

24       23.    The claims asserted against FrontBridge in the *MessageOne* Action do

25   not fall within the Policy's insuring agreement and do not constitute a "Wrongful

26   Act."  Accordingly, there is no coverage, nor was there the potential for coverage,

27
28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   under the Policy for the *MessageOne* Action or a Judgment in the *MessageOne*

2   Action.

3      24.   An actual and justiciable controversy exists between HCC and the

4   Defendants regarding HCC's obligations under the Policy with respect to the

5   *MessageOne* Action and the settlement thereof.  Drazan and O'Driscoll have

6   asserted that coverage is afforded under the Policy for the *MessageOne* Action and

7   the settlement.  HCC is informed and believes that FrontBridge maintains that

8   coverage is available under the Policy for the *MessageOne* Action and the

9   settlement.  HCC, on the other hand, contends that coverage is not available under

10  the Policy for the *MessageOne* Action or the settlement and that it is not obligated

11  to indemnify Defendants for the settlement.

12     25.   By virtue of the foregoing, HCC is entitled to a judgment declaring

13  that coverage is not afforded under the Policy for the *MessageOne* Action and that

14  HCC has no obligation to indemnify Defendants for the settlement of the

15  *MessageOne* Action.

16  

**COUNT II**

17  

**(Declaratory Relief – Against All Defendants)**

18     26.   HCC repeats and incorporates by reference the allegations in

19  paragraphs 1 through 25 of the Complaint.

20     27.   Policy Section IV., as modified by Endorsement No. 13, provides that

21  "this Policy shall not apply to any Claim and Claim Expenses arising out of any

22  Insured's actual or alleged … misappropriation of confidential or proprietary

23  information or trade secrets from a past or current competitor, client or employer of

24  any Insured."

25     28.   The *MessageOne* Action arises out of the actual or alleged

26  misappropriation by FrontBridge of confidential or proprietary information or trade

27  secrets of MessageOne, a past or current competitor of FrontBridge.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

29.     Accordingly, there is no coverage under the Policy for the *MessageOne* Action.

30.     An actual and justiciable controversy exists between HCC and the Defendants regarding HCC's obligations under the Policy with respect to the *MessageOne* Action and the settlement thereof.  Drazan and O'Driscoll have asserted that coverage is afforded under the Policy for the *MessageOne* Action and the settlement.  HCC is informed and believes that FrontBridge maintains that coverage is available under the Policy for the *MessageOne* Action and the settlement.  HCC, on the other hand, contends that coverage is not available under the Policy for the *MessageOne* Action or the settlement and that it is not obligated to indemnify Defendants for the settlement.

31.     By virtue of the foregoing, HCC is entitled to a judgment declaring that coverage is not afforded under the Policy for the *MessageOne* Action and that HCC has no obligation to indemnify Defendants for the settlement of the *MessageOne* Action.

## COUNT III

### (Declaratory Relief - Against All Defendants)

32.     HCC repeats and incorporates by reference the allegations in paragraphs 1 through 31 of the Complaint.

33.     Policy Section VIII.(b) provides, in pertinent part, that "[t]he Insured shall not, except at his own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company."

34.     The Policy defines Claim Expenses in relevant part to mean "(1) fees charged by an attorney designated by [HCC] and (2) all other fees, costs or expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by [HCC] or an attorney designated by [HCC], or by the Insureds with the written consent of [HCC]."  (Policy Section II.(f).)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

35.     All amounts incurred by FrontBridge for the defense and settlement of the *MessageOne* Action were undertaken without HCC's consent.

36.     Coverage for any Claim Expenses (including attorneys' fees and costs), as well as the settlement of the *MessageOne* Action, is precluded because FrontBridge did not obtain HCC's written consent to settle the *MessageOne* Action or to incur Claim Expenses associated with the *MessageOne* Action.  Further, the amounts incurred in defense of the *MessageOne* Action are not considered "Claim Expenses" because they were not incurred by attorneys designated by HCC or with HCC's written consent.

37.     An actual and justiciable controversy exists between HCC and the Defendants regarding HCC's obligations under the Policy with respect to the *MessageOne* Action and the settlement thereof.  Drazan and O'Driscoll have asserted that coverage is afforded under the Policy for the *MessageOne* Action and the settlement.  HCC is informed and believes that FrontBridge maintains that coverage is available under the Policy for the *MessageOne* Action and the settlement.  HCC, on the other hand, contends that coverage is not available under the Policy for the *MessageOne* Action or the settlement and that it is not obligated to indemnify Defendants for the settlement.

38.     By virtue of the foregoing, HCC is entitled to a judgment declaring that coverage is not afforded under the Policy for the *MessageOne* Action and that HCC has no obligation to indemnify Defendants for the settlement of the *MessageOne* Action.

## COUNT IV

### (Declaratory Relief – Against All Defendants)

39.     HCC repeats and incorporates by reference the allegations in paragraphs 1 through 38 of the Complaint.

40.     As set forth above, coverage is not afforded under the Policy for the amounts sought in the *MessageOne* Action or the settlement thereof because (1) the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    *MessageOne* Action and the claims asserted therein did not allege an error,

2    omission or breach of duty solely in providing or failing to provide Managed

3    Messaging Services, for others for a fee, and therefore did not fall within the scope

4    of the Policy's insuring agreement and did not constitute a "Wrongful Act"; (2) the

5    *MessageOne* Action arises out of the actual or alleged misappropriation by

6    FrontBridge of confidential or proprietary information or trade secrets of

7    MessageOne, and is therefore excluded from coverage by Policy Section IV., as

8    modified by Endorsement No. 13; and (3) all amounts incurred by FrontBridge in

9    its defense and settlement of the *MessageOne* Action were undertaken without

10    seeking or receiving HCC's consent, and are therefore not covered pursuant to

11    Policy Sections II.(f) and VIII.(b).

12      41.    Because coverage is not afforded under the Policy for the amounts

13    sought in the *MessageOne* Action or the settlement thereof, HCC had no duty to

14    defend the *MessageOne* Action.

15      42.    By virtue of the foregoing, HCC is entitled to a judgment declaring

16    that it had no obligation under the Policy to defend FrontBridge in the *MessageOne*

17    Action.  HCC is informed and believes that the Defendants dispute this contention.

18                          **COUNT V**

19          **(Declaratory Relief – Against All Defendants)**

20      43.    HCC repeats and incorporates by reference the allegations in

21    paragraphs 1 through 42 of the Complaint.

22      44.    Policy Section VI.(e) provides that:

23        In the event any portion of a Claim does not come within the

24        coverage afforded by this Policy, [HCC] shall be entitled to an

           allocation of Claim Expenses incurred on behalf of the Insureds

25        based upon the ratio of the number of counts, causes of action or

26        allegations for which coverage is afforded under this Policy as

           compared to the number of such counts, causes of action or

27        allegations which are not within the scope of coverage.  [HCC]

28        shall not be required or obligated to pay that portion of Claim

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Expenses allocated to those counts, causes of action, or allegations which are not within the scope of coverage herein.

45.   In addition to the provisions discussed above, HCC notes that:

- The Policy's Insuring Agreement in Policy Section I. provides that:

> The Company shall pay on behalf of the Insured any Loss and Claim Expenses in excess of the Deductible amount and subject to the Limit of Liability as the Insured acting in the profession described in Item 3 of the Declarations shall become legally obligated to pay for Claim or Claims first made against the Insured during the Policy Period by reason of any Wrongful Act by an Insured *provided always that the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy* and further provided that such Wrongful Act took place subsequent to the Retroactive Date set forth in Item 8 of the Declarations.

(Italics added.) The Inception Date of the Policy is June 22, 2004. According to the allegations in the *MessageOne* Action, on May 10, 2004, FrontBridge broke-off negotiations with MessageOne and announced that it had acquired MessageRite, Inc. FrontBridge allegedly made misrepresentations and engaged in other wrongdoing prior to May 10, 2004, and prior to the Inception Date of the Policy. As such, HCC is informed and believes that FrontBridge had knowledge of Wrongful Act(s) forming the basis of the *MessageOne* Action prior to the Inception Date of the Policy.

- Potentially covered "Loss" under the Policy, subject to the terms and conditions of the Policy, is defined to mean, in pertinent part, "a monetary judgment, award or settlement for damages including an award by a court of reasonable attorney's fees and costs to a party making a Claim, but does not include fines, penalties or any matter uninsurable under the Law pursuant to which this Policy will be construed...."

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

(Policy, Section II.(d).)  Thus, the Policy does not provide coverage for the injunctive relief sought by MessageOne, and it does not provide coverage for the punitive damages, disgorgement, restitution or any other relief sought by MessageOne that is uninsurable under California law, or amounts attributable to the settlement of such requested relief.

- Policy Section IV.(a) provides that "[t]his Policy does not apply either directly or indirectly to any Claim and Claim Expenses … [b]ased upon or arising out of any dishonest, criminal, fraudulent, malicious or intentional Wrongful Acts, errors or omissions committed by or at the direction of the Insured."  As such, the causes of action or counts alleged in the *MessageOne* Action which are based on or arise out of dishonest, fraudulent, malicious and intentional wrongdoing on the part of FrontBridge are not covered under the Policy.

- Policy Section VIII.(a) provides that:

  1)  In the event of any Claim made against the Insured, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the firm named in Item 6 of the Declarations as soon as practicable.

  2)  If the institution of arbitrations proceedings or suit is brought against the Insured, the Insured shall immediately forward to the firm named in Item 6 of the Declarations every demand, notice, summons or other process received by the Insured or his representative.

Item 6 of the Declarations identifies "Wilson, Elser, Moskowitz, Edelman & Dicker, 150 East 42nd Street, New York, New York  10017" as the firm to whom notice of claims is to be provided.  Notice of the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1     *MessageOne* Action was not provided in accordance with this provision

2     until a "proof of claim" was forwarded to Wilson, Elser, Moskowitz,

3     Edelman & Dicker on or about September 30, 2008, and received on

4     October 2, 2008 by Wilson, Elser, Moskowitz, Edelman & Dicker

5     46.     HCC is entitled to a judgment declaring that it is not required or

6     obligated to pay all or part of those amounts incurred which are not within the

7     scope of coverage.  HCC is informed and believes that the Defendants dispute this

8     contention.

9                              **COUNT VI**

10                **(Declaratory Relief – Against All Defendants)**

11     47.     HCC repeats and incorporates by reference the allegations in

12     paragraphs 1 through 46 of the Complaint.

13     48.     The Policy contains a $250,000 aggregate sub-limit for Claims arising

14     from copyright or trademark violations.  (*See* Endorsement No. 6.)

15     49.     The *MessageOne* Action alleges trademark violations on the part of

16     FrontBridge.  For the reasons discussed above, coverage is not available under the

17     policy for the entire *MessageOne* Action, including the alleged trademark

18     violations.   Alternatively, HCC's liability under the Policy is limited to $250,000

19     for those Claim Expenses and settlement amounts attributable to the *MessageOne*

20     Action allegations arising from copyright or trademark violations.

21     50.     HCC is entitled to a judgment declaring that the Policy does not

22     provide coverage in excess of the $250,000 aggregate sub-limit of liability for those

23     Claim Expenses and settlement amounts attributable to the *MessageOne* Action

24     allegations arising from copyright or trademark violations.  HCC is informed and

25     believes that the Defendants dispute this contention.

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  |  ## COUNT VII

2  |  ### (Declaratory Relief – Against Drazan and O'Driscoll)

3  51.  HCC repeats and incorporates by reference the allegations in

4  paragraphs 1 through 50 of the Complaint.

5  52.  Drazan and O'Driscoll assert that FrontBridge assigned them, as

6  stockholder representatives of the former stockholders of FrontBridge, all of

7  FrontBridge's insurance rights with respect to the claims asserted in the

8  *MessageOne* Action.

9  53.  Drazan and O'Driscoll provided HCC with a purported

10  "Acknowledgement of Assignment of Insurance Rights," dated May 14, 2008, as

11  evidence of the assignment.

12  54.  HCC has requested that Drazan and O'Driscoll provide additional

13  information and evidence verifying FrontBridge's purported assignment of

14  insurance rights to Drazan and O'Driscoll, but Drazan and O'Driscoll have failed to

15  provide any additional information or evidence.

16  55.  Policy Section VIII.(j) provides that "[n]o assignment of interest under

17  this Policy shall bind [HCC] unless its prior written consent is endorsed hereon."

18  HCC has not consented to the assignment of any of FrontBridge's rights under the

19  Policy.

20  56.  HCC is entitled to a judgment declaring that Drazan and O'Driscoll are

21  not the assignees of any of FrontBridge's rights under the Policy or FrontBridge's

22  claims against HCC, if any, related to the *MessageOne* Action.  Alternatively, HCC

23  is entitled to a declaration that HCC is not bound by any assignment of

24  FrontBridge's rights to Drazan and O'Driscoll.  HCC is informed and believes that

25  Drazan and O'Driscoll dispute this contention.

26  |  ## PRAYER FOR RELIEF

27  WHEREFORE, HCC prays for the following relief and for judgment against

28  Defendants as follows:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

**COUNT I**

2      1.      A judgment declaring that coverage is not afforded under the Policy

3   for the *MessageOne* Action and that HCC has no obligation to indemnify

4   Defendants for the settlement of the *MessageOne* Action.

5

**COUNT II**

6      2.      A judgment declaring that coverage is not afforded under the Policy

7   for the *MessageOne* Action and that HCC has no obligation to indemnify

8   Defendants for the settlement of the *MessageOne* Action.

9

**COUNT III**

10      3.      A judgment declaring that coverage is not afforded under the Policy

11   for the *MessageOne* Action and that HCC has no obligation to indemnify

12   Defendants for the settlement of the *MessageOne* Action.

13

**COUNT IV**

14      4.      A judgment declaring that HCC had no obligation under the Policy to

15   defend FrontBridge in the *MessageOne* Action.

16

**COUNT V**

17      5.      Alternatively, a judgment declaring that coverage is barred or limited

18   for the *MessageOne* Action in whole or in part, and that HCC is not required or

19   obligated to pay that portion of expenses incurred in defense that are allocable to

20   counts, causes of action, or allegations which are not within the scope of coverage.

21

**COUNT VI**

22      6.      Alternatively, a judgment declaring that the Policy does not provide

23   coverage in excess of the $250,000 aggregate sub-limit of liability for those Claim

24   Expenses and settlement amounts attributable to the *MessageOne* Action

25   allegations arising from copyright or trademark violations.

26

**COUNT VII**

27      7.      A judgment declaring that Drazan and O'Driscoll are not the assignees

28   of any of FrontBridge's rights under the Policy or FrontBridge's claims against

1    HCC, if any, related to the *MessageOne* Action.  Alternatively, a declaration that

2    HCC is not bound by any assignment of rights by FrontBridge to Drazan &

3    O'Driscoll.

### ALL COUNTS

5        8.      For HCC's costs of suit herein; and

6        9.      For such other relief as this Court deems just and proper.

7    Dated:    September 24, 2009          Respectfully submitted,

8                                         TROUTMAN SANDERS LLP

9

10                                       By:

11                                          Terrence R. McInnis
                                            Ryan C. Tuley
12                                          Thomas H. Prouty
                                            *Attorneys for Plaintiff*
13                                          *Houston Casualty Company*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# Exhibit A

# Exhibit A



# HOUSTON CASUALTY COMPANY

ADMINISTRATIVE OFFICES: 13403 NORTHWEST FREEWAY, HOUSTON, TEXAS 77040

## DECLARATIONS
### PROFESSIONAL LIABILITY ERRORS & OMISSIONS INSURANCE
### <u>THIS IS A CLAIMS MADE POLICY</u>

Broker No.:  7000110
             SWETT & CRAWFORD

No.: H704-13595
Renewal of: HMP-H703-12761

Item 1.  Named Insured: FRONTBRIDGE TECHNOLOGIES, INC.

Item 2.  Address:   4640 ADMIRALTY WAY SUITE 888
                    MARINA DEL REY, CA 90292-6602

Item 3.  Named Insured's Profession: See Endorsement # 1, E32

Item 4.  Limit of Liability:  $   5,000,000        Each Claim and in the Aggregate
                                                   including Claim Expenses.

Item 5.  Deductible:          $      25,000        Each Claim including Claim Expenses.

Item 6.  Notice of Claim to:  Wilson, Elser, Moskowitz, Edelman & Dicker
                              150 East 42nd Street, New York, New York 10017

Item 7.  Policy Period:        Inception Date:  6/22/04    Expiration Date:  6/22/05
                               12:01 A.M. Standard Time at the address of the Named Insured herein.

Item 8.  Retroactive Date:  6/05/00      Item 9.  Date of Application:  6/22/04

Item 10. Premium:      $   59,500.00 Administrative/Inspection Fee. $125.00

Item 11. Extension Period: 12 MONTHS     Item 12. Extension Percentage:  75.00%

Attachments: (1) E32, (2) E46, (3) E109, (4) E49, (5) E53, (6) E57, (7) E41, (8) E91,
(9) E133, (10) E69, (11) E94, (12) E151, (13) E159, (14) E162.

This Policy has been signed at ___Upper Saddle River, NJ___

Dated ___6/25/04___ by _____         EDH

MPL001 (10/01)

FILE COPY

Exhibit *A* Page 18

# PROFESSIONAL LIABILITY
# ERRORS & OMISSIONS INSURANCE
## (This Insurance Is On A Claims Made Basis)

THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY PROVIDED. PLEASE REVIEW THIS POLICY CAREFULLY WITH YOUR INSURANCE BROKER OR ADVISOR.

In consideration of the payment of the premium, the undertaking of the Insured to pay the Deductible herein and in reliance upon all statements made and information in the application, which is attached hereto and made a part of this Policy, and subject to all the terms and conditions of this Policy, the Company agrees with the Insured as follows:

## I.   COVERAGE

### Coverage-Payment and Claims Made Provision

The Company shall pay on behalf of the Insured any Loss and Claim Expenses in excess of the Deductible amount and subject to the Limit of Liability as the Insured acting in the profession described in Item 3 of the Declarations shall become legally obligated to pay for Claim or Claims first made against the Insured during the Policy Period by reason of any Wrongful Act by an Insured provided always that the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy and further provided that such Wrongful Act took place subsequent to the Retroactive Date set forth in Item 8 of the Declarations.

## II.   DEFINITIONS

Whenever used in this Policy, the following terms or words are defined as follows:

a)   **Policy Period**
"Policy Period" shall mean the period from the Inception Date of this Policy to its Expiration Date as set forth in Item 7 of the Declarations or its earlier termination date, if any.

b)   **Insured**
"Insured" or "Insureds" shall mean
1)   The Named Insured as designated in Item 1 of the Declarations;
2)   Any partner, executive officer, director or employee of the Named Insured while acting within the scope of their duties on behalf of the Named Insured;
3)   Any former partner, executive officer, director or employee of the Named Insured while acting within the scope of their duties on behalf of the Named Insured;
4)   The estate, the heirs, assigns or legal representatives in the event of death or incompetency of any individual Insured under this Policy.

Exhibit _A_ Page _19_

c) **Claim**

"Claim" shall mean a demand received by the Insured for compensation of damages, including the service of suit or institution of arbitration proceedings against the Insured.

d) **Loss**

"Loss" shall mean a monetary judgment, award or settlement for damages including an award by a court of reasonable attorney's fees and costs to a party making Claim, but does not include fines, penalties or any matter uninsurable under the Law pursuant to which this Policy will be construed, nor the return of fees or charges for the services rendered or to be rendered.

e) **Wrongful Act**

"Wrongful Act" shall mean any actual or alleged error or omission or breach of duty committed or alleged to have been committed or for failure to render such professional services as are customarily rendered in the profession of the Insured as stated in Item 3 of the Declarations.

f) **Claim Expenses**

"Claim Expenses" shall mean (1) fees charged by an attorney designated by the Company and (2) all other fees, costs or expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by the Company or an attorney designated by the Company, or by the Insureds with the written consent of the Company. However, "Claim Expenses" do not include salary charges of regular employees or officers of the Company nor salary or wages of the Insureds, nor any fees, costs, or expenses incurred with respect to any criminal proceedings or actions against an Insured.

## III. CLAIMS MADE EXTENSION CLAUSE

If during the Policy Period, the Insured first becomes aware of any specific and identifiable Wrongful Act and during the Policy Period gives written notice to the Company of:

a) the specific Wrongful Act; and

b) the damage which has or may result from such Wrongful Act; and

c) the circumstances by which the Insured first became aware of such Wrongful Act;

then any Claim that is subsequently made against the Insured arising out of such Wrongful Act shall be deemed for the purposes of this insurance to have been made against the Insured during the Policy Period.

## IV. EXCLUSIONS

This Policy does not apply either directly or indirectly to any Claim and Claim Expenses:

a) Based upon or arising out of any dishonest, criminal, fraudulent, malicious or intentional Wrongful Acts, errors or omissions committed by or at the direction of the Insured.

b) For liability arising out of the Insured's services and/or capacity as:

    1) an officer, director, partner, trustee, or employee of a business enterprise not named in the Declarations or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;

    2) a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, or with respect to any employee benefit plan of an Insured.

c) Made by any business enterprise which is operated, managed or owned, in whole or in part, by the Named Insured or the Named Insured's parent company or any affiliated, subsidiary or associate company.

d) Arising out of infringement of patent, copyright or trademark.

e) For bodily injury, sickness, disease or death of any person, or for emotional distress, mental anguish, or other similar injury or damage, or any injury to, or destruction of, any tangible property or loss of use resulting therefrom.

f) Arising out of false arrest, humiliation, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, or malicious prosecution, libel, slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

g) Based upon or arising out of discrimination with respect to a violation of any municipal, State or Federal Civil Rights law, regulation or ordinance.

h) Based upon or arising out of a violation or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any State Blue Sky or securities law or similar state or Federal statute and any regulation or order issued pursuant to any of the foregoing statutes, unless endorsed hereon.

i) For the liability of others assumed by the Insured under any oral or written contract or agreement, unless such liability would have attached to the Insured even in the absence of such agreement.

j) Based upon the Insured's failure to procure or maintain adequate insurance or bonds, or any Claim arising out of the Insured's failure to comply with any law with respect to the Insured's employees concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits or any similar law.

k) Based upon the Employee Retirement Income Security Act of 1974 or similar provisions of any Federal, State or local statutory law or common law.

l) For actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder.

m) Based upon assertions, allegations, causes of action or demands whatsoever by or on behalf of an Insured or Insureds under this Policy against another Insured or Insureds hereunder.

Exhibit A Page 21

n) Based upon the actual or alleged performance or the failure to perform by the Insureds any professional services as an attorney, or the actual or alleged performance or failure to perform any professional services as an attorney by any person or entity retained or employed by the Insureds.

o) Due to, based upon or arising out of, directly or indirectly, resulting from or in consequence of, or in any way involving seepage, pollution or contamination of any kind.

## V.  WAIVER OF EXCLUSIONS AND CONDITIONS

Whenever coverage under any provision of this Policy would be excluded, suspended or lost:

a) because of any exclusion relating to dishonest, criminal, fraudulent, malicious or intentional Wrongful Acts or omissions by an Insured and with respect to which any other Insured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof; or

b) because of non-compliance with any condition relating to giving of notice to the Company with respect to which any other Insured shall be in default, solely because of the default or concealment of the default by any other Insured responsible for the loss or damage otherwise insured hereunder;

the Company agrees that such insurance as would otherwise be afforded under this Policy shall continue in effect with respect to each and every Insured who did not personally commit or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts or omissions described in any such exclusion or condition; provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of this Waiver of Exclusions and Conditions shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured or employee to comply therewith.

## VI. LIMITS OF LIABILITY

a) **Deductible**
The Deductible amount stated in the Declarations shall be paid by the Insured and shall apply to each Claim and shall include Claim Expenses.

b) **Multiple Claims**
One or more Claims based upon or arising out of the same Wrongful Act or interrelated Wrongful Acts by one or more of the Insureds shall be considered a single Claim.

c) **Limit of Liability**
Subject to the foregoing, the Company's total liability for Loss including Claim Expenses resulting from all Claims first made against the Insureds during the Policy Period shall not exceed the amount stated in the Declarations as "Limit of Liability," regardless of the time when such payment is made. The inclusion of more than one Insured hereunder shall not operate to either increase the amount of the applicable Deductible nor the amount of the Company's Limit of Liability. The Limit of Liability shall be excess of the Deductible amount.

Exhibit _A_ Page _22_

d) **Exhaustion of Limits of Liability**
The Company will not be liable to pay any Loss or Claim Expenses or continue the defense of any Claim, after the Limit of Liability has been exhausted.

e) **Allocation of Claim Expenses**
In the event that any portion of a Claim does not come within the coverage afforded by this Policy, the Company shall be entitled to an allocation of Claim Expenses incurred on behalf of the Insureds based upon the ratio of the number of counts, causes of action or allegations for which coverage is afforded under this Policy as compared to the number of such counts, causes of action or allegations which are not within the scope of coverage. The Company shall not be required or obligated to pay that portion of Claim Expenses allocated to those counts, causes of action, or allegations which are not within the scope of coverage herein.

## VII. TERRITORY

The insurance afforded applies worldwide, provided that suit is brought or Claim is made within the United States, its territories and possessions or Canada.

## VIII. CONDITIONS

a) **Insured's Duties in the Event of Claim, Arbitration or Suit**

1) In the event of any Claim made against the Insured, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the firm named in Item 6 of the Declarations as soon as practicable.

2) If the institution of arbitration proceedings or suit is brought against the Insured, the Insured shall immediately forward to the firm named in Item 6 of the Declarations every demand, notice, summons or other process received by the Insured or his representative.

b) **Assistance and Cooperation of the Insured**
The Insured shall cooperate with the Company and its representatives and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

c) **Settlement of Claim**

The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled plus Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of Clause VI, Limits of Liability.

d) **Audit**

The Company may examine and audit the Insured's books and records at any time during the Policy Period and after the final termination of this Policy, as far as they relate to the subject matter of this Policy.

e) **Subrogation**

In the event of any Claim or payment under this insurance, the Company shall be subrogated to the extent of such payment to all rights of recovery therefor, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Company to effectively bring suit in the name of the Insureds. The Insureds shall do nothing after Claim is made against them to prejudice such rights. Any recovery shall first be paid to the Company to the extent of any Loss or Claim Expenses paid by the Company, with the balance paid to the Insured. However, no subrogation shall be had against any Insured unless such Insured is excluded from coverage by reason of Exclusion IV (a).

f) **Other Insurance**

This Policy shall be excess insurance over any other valid and collectable insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this Policy.

g) **Cancellation**

This Policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing written notice stating when thereafter such cancellation shall be effective. If cancelled by the Insured, the Company shall retain the customary short rate proportion of the earned premium. This Policy may also be cancelled, with or without the return by tender of the unearned premium, by or on behalf of the Company by delivering to the Named Insured at the address set forth in the Declarations or by sending to the Named Insured by mail, registered or unregistered, at the address in the Declarations not less than thirty (30) days (or ten (10) days in the event of non-payment of premium) written notice stating when the cancellation shall be effective. If cancelled by the Company, the Company shall retain the pro rata portion of the earned premium. For the purpose of this Policy, notice of cancellation given to the Named Insured by the Company or given to the Company by the Named Insured pursuant to this paragraph shall be deemed to be notice on behalf of all Insureds hereunder.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction hereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Exhibit A Page 24

h) **Extension of Policy Period**

In the event of cancellation or non-renewal of this Policy in its entirety by the Company, this Policy may be extended for the additional period as indicated in Item 11 of the Declarations, for a premium based upon the percentage as indicated in Item 12 of the Declarations of the total premium, for Claims first made against the Insured during the said extension period provided:

1) The Wrongful Act giving rise to such Claim is committed or alleged to have been committed prior to the effective date of the cancellation or the original expiration date, whichever is applicable, and which would be otherwise insured by this Policy; and

2) Written notice of the exercise of this option is given by the Named Insured in Item 1 of the Declarations to the Company within ten (10) days after the effective date of cancellation or non-renewal; and

3) Such additional period shall be deemed part of the expiring Policy Period and not an addition thereto; and

4) For purposes of such additional period, coverage shall be applicable only with respect to Claims first made against the Insureds during such additional period. The provisions of Clause III of this Policy shall not be applicable to such additional period.

The quotation of a renewal premium higher than the expiring premium or a change in other terms or conditions shall not be deemed to be a cancellation or non-renewal by the Company.

i) **Action Against the Company**

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

j) **Assignment**

No assignment of interest under this Policy shall bind the Company unless its prior written consent is endorsed hereon.

k) **Changes**

Notice to or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy, nor estop the Company from asserting any rights under the terms of this Policy. The terms of this Policy shall not be waived or changed, except by endorsement issued to form a part of this Policy, signed by an authorized representative of the Company.

Exhibit A Page 25

l)  **Application**

By acceptance of this Policy, the Insureds agree that the statements in the application are personal representations, that they shall be deemed material and that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the Insureds and the Company or any of their agents relating to this insurance.

m)  **False or Fraudulent Claims**

If any Insured shall commit fraud in proffering any Claim as regards amount or otherwise, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

Exhibit A Page 26

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

### NAMED INSURED'S PROFESSIONAL DESCRIPTION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Item 3 of the Declarations, the "Named Insured's Profession", shall read as follows:

3. Named Insured's Profession:

   Solely in the performance of providing Managed Messaging Services, for others for a fee.

All other terms and conditions remain unchanged.

Endorsement effective   6/22/04     HMP Policy No. H704-13595

Endorsement No.    1

                              Professional Indemnity Agency, Inc.

                        by_____
                              (Authorized Representative)

HMP E-32

# *Endorsement*

Named Insured: FRONTBRIDGE TECHNOLOGIES, INC.

NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD)

In consideration of the premium charged, it is understood and agreed that this Policy of Insurance does not apply:

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, any insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

Exhibit A Page 28

# *Endorsement*

NUCLEAR INCIDENT EXCLUSION, Continued                    Page 2 of 2

IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive
properties; "nuclear material" means source material, special nuclear
material or byproduct material; "source material", "special nuclear
material", and "byproduct material" have the meanings given them in
the Atomic Energy Act 1954 or in any law amendatory thereof; "spent
fuel" means any fuel element or fuel component, solid or liquid, which
has been used or exposed to radiation in a nuclear reactor; "waste"
means any waste material (1) containing byproduct material and (2)
resulting from the operation by any person or organization of any
nuclear facility included within the definition of nuclear facility
under paragraph (a) or (b) thereof;"nuclear facility" means

    (a) any nuclear reactor;
    (b) any equipment  or  device  designed or used for (1) separating
        the  isotopes  of  uranium  or  plutonium,  (2)  processing or
        utilizing spent fuel, or (3) handling, processing or packaging
        waste;
    (c) any  equipment  or device used for the processing, fabricating
        or alloying of  special  nuclear  material if at any time the
        total amount of such material in the custody of the insured at
        the  premises  where  such  equipment  or  device  is  located
        consists of  or  contains  more  than 25 grams of plutonium or
        uranium 233 or any combination thereof, or more than 250 grams
        of uranium 235;
    (d) any  structure,  basin, excavation, premises or place prepared
        or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all
operations conducted on such site and all premises used for such
operations;  "nuclear reactor" means any apparatus designed or used to
sustain nuclear fission in a self-supporting chain reaction or to
contain a critical mass of fissionable material.  With respect to
injury to or destruction of property, the word "injury" or
"destruction" includes all forms of radioactive contamination of
property.

It is understood and agreed that, except as specifically provided in
the foregoing to the contrary, this clause is subject to the terms,
exclusions, conditions and limitations of the Certificate of Insurance
to which it is attached.

It is further understood and agreed that this Policy has a 25%
minimum earned premium condition.

All other terms and conditions remain unchanged.

Endorsement effective   6/22/04     HMP Policy No. H704-13595
Endorsement No.    2

                                    Professional Indemnity Agency, Inc.

                                    by_____
                                       (Authorized Representative)

HMP E-46
E46

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

## SERVICE OF SUIT CLAUSE

As used in this endorsement, the "Company" refers to Houston Casualty Company.

This applies in jurisdictions where the Company is not an admitted insurer.

It is agreed that in the event of the Company's failure to pay the amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance, and hereby designates the President of the Houston Casualty Company in care of the General Counsel, at 13403 Northwest Freeway, Houston, TX, 77040, as the person to whom the said officer is authorized to mail such process or true copy thereof.

It is further understood and agreed that service of process in such suit may be made upon CHRISTOPHER L. MARTIN, Attorney-In-Fact, at 13403 Northwest Freeway, Houston, TX, 77040, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

All other terms and conditions remain unchanged.

Endorsement Effective:   6/22/04      Policy No.: H704-13595

Endorsement No.:    3

                              Professional Indemnity Agency, Inc.


                    by _____
                              (Authorized Representative)

HMP E-109

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to any claims and claims expenses based upon, or arising out of:

A)   Any Vandalism and/or Malicious Mischief including but not limited to Computer Viruses;

B)   The sale, maintenance, or repair of any Computer Hardware.

All other terms and conditions remain unchanged.

Endorsement effective:   6/22/04    HMP Policy No.: H704-13595

        Endorsement No.:    4

                        Professional Indemnity Agency


                by: _____
                        (Authorized Representative)


HMP E-49
E49


Exhibit _A_ Page 30

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood
and agreed that part A) of Endorsement E-49 is deleted in its entirety.

All other terms and conditions remain unchanged.

Endorsement effective:  6/22/04          Policy No.:  H704-13595

Endorsement No.:    5

                                Professional Indemnity Agency, Inc.

                    by _____
                           (Authorized Representative)

HMP E-53

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood
and agreed that the words "copyright" and "trademark" are deleted from
the section of this Policy entitled "IV.EXCLUSIONS, part d).

It is further understood and agreed that a sub-limit of Liability of
$250,000 in the aggregate shall apply to the Limit of Liability stated
in Item 4 of the Declarations Page.

All other terms and conditions remain unchanged.

Endorsement effective:  6/22/04      Policy No.: H704-13595

   Endorsement No.:   6

                   Professional Indemnity Agency, Inc.

            by: _____
                   (Authorized Representative)

HMP E-57
E57

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood and agreed that the section of this Policy entitled "II. Definitions, part e), Wrongful Act", is amended to include the following:

With respect to the Insured's profession as stated in Item 3 of the Declarations, WRONGFUL ACT, shall also mean any actual or alleged:

1.   Libel, slander or other forms of defamation;

2.   Invasion or infringement of the right of privacy or publicity;

3.   Plagiarism, piracy or misappropriation of ideas under implied contract.

It is also understood and agreed that Exclusion "f" of this Policy is deleted in its entirety and replaced with the following:

f)   to any claim and claim expenses arising out of (1) false arrest, detention or imprisonment; (2) wrongful entry or eviction, or invasion of any right of private occupancy.

All other terms and conditions remain unchanged.

Endorsement effective   6/22/04     HMP Policy No. H704-13595

        Endorsement No.   7

                          Professional Indemnity Agency, Inc.

                          by_____
                          (Authorized Representative)

HMP E-41
E41

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood
and agreed that punitive damages shall not be considered to be
"fines" and/or "penalties" in the section of this Policy
entitled II. DEFINITIONS d) Loss.

All other terms and conditions remain unchanged.

Endorsement effective:  6/22/04        Policy No.: H704-13595

   Endorsement No.:    8

                     Professional Indemnity Agency, Inc.

              by: _____
                   (Authorized Representative)

HMP E-91
E91

# *Endorsement*

NAMED INSURED:  FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood
and agreed that the section of this Policy Titled "VIII.
CONDITIONS", part h), Extension of Policy Period is deleted
in its entirety and replaced with the following:

h) Extension of Policy Period
In the event of cancellation or non-renewal of this Policy in
its entirety by the Company or the Insured, this Policy may be
extended for the additional period as indicated in Item 11 of the
Schedule, for a premium based upon the percentage as indicated in
Item 12 of the Declarations of the total premium, for Claims first
made against the Insured during the said extension period provided:
1) The Wrongful Act giving rise to such Claim is committed or alleged
   to have been committed prior to the effective date of the cancel-
   lation or the original expiration date, whichever is applicable,
   and which would be otherwise insured by this Policy; and
2) Written notice of the exercise of this option is given by the
   Named Insured in Item 1 of the Declarations to the Company within
   ten(10) days after the effective date of cancellation or non-
   renewal; and
3) Such additional period shall be deemed part of the expiring
   Policy Period and not an addition thereto;and
4) For purposes of such additional period, coverage shall be applicable
   only with respect to Claims first made against the Insureds during
   such additional period. The provisions of Clause III of this
   Policy shall not be applicable to such additional period; and
5) The limit of liability applicable to the Extended Discovery Period
   shall be only the remaining limit of liability available under
   the Policy and no additional limit of liability shall be
   applicable; and
The quotation of a renewal premium higher than the expiring premium
or a change in other terms or conditions shall not be deemed to be
a cancellation or non-renewal by the Company.

All other terms and conditions remain unchanged.


Endorsement effective  6/22/04     HMP Policy No. H704-13595

          Endorsement No.   9




                         Professional Indemnity Agency, Inc.



                         by_____
                           (Authorized Representative)


HMP E-133
E133

                                        Exhibit 4 Page 35

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, and the deductible shown
on Item #5, of the Declarations, it is hereby understood and
agreed that Item #8 of the Declarations, is amended to show a
Retroactive Date of 9/19/03 in lieu of 6/05/00, for limits
provided in excess of the primary $1,000,000.

All other terms and conditions remain unchanged.

Endorsement effective:   6/22/04  HMP Policy No.: H704-13595

Endorsement No.:   10

                          Professional Indemnity Agency, Inc.

                    by  _____
                              (Authorized Representative)

HMP E-69
E69

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood and agreed that the deductible shown on Item #5, of the Declarations Page, it is hereby understood and agreed that Item #8 of the Declarations, is amended to show a Retroactive Date of 12/31/03 in lieu of 6/05/00 for the $2,000,000 limit excess of the $3,000,000 limit layer.

All other terms and conditions remain unchanged.

Endorsement effective:    6/22/04         Policy No.:  H704-13595

Endorsement No.:   11

                    Professional Indemnity Agency, Inc.

            by  _____
                    (Authorized Representative)

HMP E-94
E94

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged it is hereby understood and agreed that the section of this Policy entitled "VII. TERRITORY" is deleted in its entirety and replaced with the following:

This insurance applies to a Wrongful Act committed anywhere in the world, provided that with respect to any Claim brought outside the United States of America (including its territories or possessions), Puerto Rico or Canada, the Policy shall not apply to any Claim brought in any Communist led country, and/or any country not maintaining active diplomatic relations with the United States of America at the time the Claim is first made in writing.

All other terms and conditions remain unchanged.

Endorsement effective:   6/22/04      Policy No.: H704-13595

Endorsement No.:   12

                              Professional Indemnity Agency, Inc.

by: _____
                      (Authorized Representative)

HMP E-151
E151

Exhibit _A_ Page _38_

# *Endorsement*

NAMED INSURED: FRONTBRIDGE TECHNOLOGIES, INC.

In consideration of the premium charged, it is hereby understood and agreed that this Policy shall not apply to any Claim and Claim Expenses arising out of any Insured's actual or alleged:

(1) misappropriation of confidential or proprietary information or trade secrets from a past or current competitor, client or employer of any Insured; or

(2) solicitation, recruiting or hiring of employees or workers from a past or current competitor, client or employer of any Insured.

All other terms and conditions remain unchanged.

Endorsement effective:   6/22/04       Policy No.: H704-13595

Endorsement No.:   13

Professional Indemnity Agency, Inc.

by: _____
      (Authorized Representative)

HMP E-159

Exhibit A Page 39

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.

Your policy contains coverage for certain losses caused by terrorism.
We are required to notify you of the portion of the premium, if any,
attributable to the coverage for terrorist acts certified under the
Terrorism Risk Insurance Act of 2002. The Act also requires us to
provide disclosure of Federal participation in payment of terrorism
losses. For a further description of an act of terrorism as
provided under the Act, see below.

You should know that effective November 26, 2002 any losses caused
by certified acts of terrorism would be partially reimbursed by the
United States government, Department of Treasury, under a formula
established by federal law. Under this formula, the United States
pays 90% of covered terrorism losses exceeding the statutorily
established deductible paid by the insurance company providing the
coverage. The premium charged for this coverage is shown below; it
does not include any charges for the portion of loss covered by the
federal government under the Act.

The portion of your premium that is attributable to coverage for
terrorist acts certified under the Act is $ -0-.

The following excerpt from the Act is provided for your information:

According to section 102(1) of the Terrorism Risk Insurance Act of
2002: "The term "act of terrorism" means any act that is certified
by the Secretary of the Treasury, in concurrence with the Secretary
of State, and the Attorney General of the United States---(1) to
be an act of terrorism; (ii) to be a violent act or an act that is
dangerous to (I) human life; (II) property; or (III) infrastructure;
(iii) to have resulted in damage within the United States, or
premises of a United States Mission; and (iv) to have been committed
by an individual or individuals acting on behalf of any foreign
person or foreign interest, as part of an effort to coerce the
civilian population of the United States or to influence the policy
or affect the conduct of the United States Government by coercion."
Section 102(1)(B) states: "No act shall be certified by the Secretary
as an act of terrorism if (i) the act is committed as part of the
course of war declared by the Congress, except that this clause
shall not apply with respect to any coverage for workers'
compensation; or (ii) property and casualty insurance losses
resulting from the act, in the aggregate, do not exceed $5,000,000."
Section 102(C) and (D) specify that the determination are final and
not subject to judicial review and that the Secretary of the Treasury
cannot delegate the determination to anyone.

All other terms and conditions remain unchanged.

Endorsement effective:   6/22/04      Policy No.: H704-13595

Endorsement No.:    14

                          Professional Indemnity Agency, Inc.

                   by: _____
HMP E-162                (Authorized Representative)


Exhibit A Page 40

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.


In consideration of the premium charged, it is hereby understood and
agreed that Item 1. of the Declarations Page, Named Insured, is amended
to include the following:

FRONTBRIDGE TECHNOLOGIES, LTD.
FRONTBRIDGE TECHNOLOGIES CANADA CORP.

It is further understood and agreed that a Retroactive Date of 4/30/04
in lieu of 6/05/00 shall apply to the coverage afforded above.


All other terms and conditions remain unchanged.

Endorsement effective:   4/30/04          HMP Policy No. H704-13595

Endorsement No.:   15



Professional Indemnity Agency, Inc.


by _____
        (Authorized Representative)

HMP E-103

# *Endorsement*

NAMED INSURED:   FRONTBRIDGE TECHNOLOGIES, INC.


In consideration of the premium charged, it is hereby understood and agreed that Item 2. of the Declarations Page, Address, is amended to read as follows:

4640 ADMIRALTY WAY, SUITE 600
MARINA DEL REY, CA 90292


All other terms and conditions remain unchanged.

Endorsement effective:   11/01/04      HMP Policy No. H704-13595

Endorsement No.:   16


Professional Indemnity Agency, Inc.

by _____
         (Authorized Representative)

HMP E-107

Exhibit A Page 42

# Exhibit B

# Exhibit B

10/07/2008 10:43 AM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MESSAGEONE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FRONTBRIDGE TECHNOLOGIES, INC. | § | CIVIL ACTION NO. A-04-CA-711-LY |
| and MESSAGERITE, INC | § | (JURY TRIAL DEMANDED) |
| | § | |
| | § | |
| Defendants. | § | |

### THIRD AMENDED COMPLAINT

Plaintiff MessageOne, Inc. ("MessageOne" or "Plaintiff") hereby files its Third Amended Complaint against FrontBridge Technologies, Inc. ("FrontBridge") and MessageRite, Inc. ("MessageRite") (together, "Defendants"), and in support thereof would show the Court the following:

### I. PARTIES

1    Plaintiff MessageOne, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 11044 Research Blvd., The Stratum Building C, Fifth Floor, Austin, Texas 78759

2.    On information and belief, Defendant FrontBridge Technologies, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 4640 Admiralty Way, Suite 888, Marina Del Rey, California 90292. On information and belief, FrontBridge is a foreign corporation conducting business in this State and in this District which has not designated an agent for service of process in this State, and which has conducted business and committed a tort in whole or in part in this State as described below. On

Exhibit B Page 43

**10/07/2008 10:43 AM**

information and belief, pursuant to FED R. CIV. P. 4(h)(1) and TEX. CIV. PRAC & REM. CODE ANN. § 17.044(a)(1), FrontBridge may be served with process by serving the Texas Secretary of State, which is appointed Defendant's agent for service of process pursuant to TEX CIV PRAC & REM. CODE ANN. § 17 044(b).

3.    On information and belief, Defendant MessageRite, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 4640 Admiralty Way, Suite 888, Marina Del Rey, California 90292. On information and belief, MessageRite is a foreign corporation conducting business in this State and in this District which has not designated an agent for service of process in this State, and which has conducted business and committed a tort in whole or in part in this State as described below   On information and belief, pursuant to FED. R CIV. P. 4(h)(1) and TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(a)(1), MesageRite may be served with process by serving the Texas Secretary of State, which is appointed Defendant's agent for service of process pursuant to TEX. CIV. PRAC. & REM CODE ANN. § 17.044(b)

## II.  JURISDICTION AND VENUE

4    This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## III.  FACTUAL BACKGROUND

6.    Plaintiff MessageOne is a leading provider of e-mail continuity and disaster recovery solutions, and is headquartered in Austin, Texas. Through its efforts, MessageOne has garnered a reputation for providing leading edge products and services designed to ensure continuity in e-mail communications in case of a catastrophic event or other communications emergency.

2                    Exhibit _B_ Page _44_

**10/07/2008 10:44 AM**

7.     MessageOne markets its proprietary e-mail continuity and disaster recovery solutions software under the proprietary trademark MESSAGEONE® (the "MessageOne Solution"). The MessageOne Solution provides users a fully-available back-up e-mail system in the event of failure of the primary system.  As e-mail has emerged as a principal form of business communication, e-mail continuity has become more critical, and the e-mail continuity market has grown.

8.     Until the Spring of 2004, Defendant FrontBridge operated primarily in the areas of spam filtering and virus protection.  Until that time, neither FrontBridge nor MessageRite had any commercially-viable e-mail continuity product.

9.     Notwithstanding FrontBridge's lack of a functional e-mail continuity product, FrontBridge, on repeated occasions, knowingly misrepresented to customers and potential customers that it had developed and tested such a product.  FrontBridge issued press releases touting its purported e-mail continuity product in the fall of 2003, notwithstanding the fact that no operational product existed.  FrontBridge subsequently admitted that it had knowingly made such misrepresentations to customers interested in e-mail continuity solutions, such as those offered by MessageOne.

10.     On or about February 2, 2004, Mr. Dan Nadir ("Nadir"), Vice President of Product Management of FrontBridge, approached MessageOne.  Once a dialogue had been established, Nadir represented that FrontBridge was interested in entering into a business transaction with MessageOne whereby FrontBridge would resell (under its own brand) the MessageOne Solution—MessageOne's e-mail continuity and disaster recovery product--to third parties  The parties agreed that their discussions would be kept confidential

3

Exhibit B Page 45

05/10/06   FRI 18:00 FAX 512   3520                                          ☒005

**10/07/2008 10:44 AM**

11.    Nadir and FrontBridge represented to MessageOne that FrontBridge would "buy, not build" an e-mail continuity service; and further represented that FrontBridge would not enter the e-mail continuity business without the participation of MessageOne.

12.    FrontBridge and MessageOne continued discussions regarding a business relationship over the course of the next two months.  Over that period, FrontBridge solicited ever-increasing amounts of information regarding technical aspects of MessageOne's e-mail continuity and disaster recovery solution, in addition to pricing, margins and other trade secret and confidential business information of MessageOne.

13.  ·  During that time, FrontBridge repeatedly represented to MessageOne that it was excited about MessageOne's products and services, that FrontBridge intended to complete the transaction, and that it was anxious to move the transaction forward to closure as soon as possible.

14.    On or about April 6, 2004, MessageOne and FrontBridge entered into a Memorandum of Understanding (the "MOU").  The MOU was promoted by FrontBridge to ensure the continued flow of information from MessageOne to FrontBridge.

15.    The MOU acknowledged and commemorated the parties' prior agreement that the discussions between the parties were confidential.  The MOU contained confidentiality provisions on which MessageOne relied in continuing to convey trade secret and confidential information to FrontBridge.  A true and correct copy of the MOU is attached as Exhibit A.

16.    Among other provisions, the MOU provides that "the parties to this MOU will not disclose to any third party the terms of the proposed transaction or the nature of our discussions, or our respective businesses without the prior written permission of both the Company and FrontBridge."

4

**10/07/2008 10:44 AM**

17.     The MOU further provides that "neither the matters set forth in this MOU, nor the consummation of the transaction contemplated herein, will breach or interfere with any contractual or other obligations to any third party."

18.     Also in early April, 2004, FrontBridge and MessageOne began drafting and negotiating a proposed Value Added Reseller Agreement (the "VAR"), whereby FrontBridge would resell the MessageOne Solution. Thereafter, FrontBridge went suddenly "dark," and for weeks did not respond to any further communications by MessageOne despite repeated efforts to reach FrontBridge by e-mail and telephone. On information and belief, FrontBridge took few or no steps to execute the VAR, and did not intend to execute the VAR when it executed the MOU

19.     On information and belief, unbeknownst to MessageOne, and concurrently with FrontBridge's learning everything it could about MessageOne's proprietary technology and processing, pricing and margins, FrontBridge was negotiating with MessageRite to acquire the company. While MessageRite was historically an e-mail archiving company, FrontBridge and MessageRite conspired to shift MessageRite's business into e-mail continuity and disaster recovery. MessageOne would not have disclosed its trade secrets and confidential information to FrontBridge had FrontBridge disclosed its intent to acquire MessageRite and migrate the business of MessageRite so that it is directly competitive with that of MessageOne. On information and belief, FrontBridge intentionally withheld this information from MessageOne, and misrepresented to MessageOne its plans in order to induce MessageOne to disclose its most confidential technical and business information.

20.     On August 30, 2004, FrontBridge announced that it had acquired MessageRite, Inc. ("MessageRite"). Also on August 30, 2004, FrontBridge finally responded to MessageOne that there would be no deal between FrontBridge and MessageOne.

Exhibit _B_ Page _47_

**10/07/2008 10:44 AM**

21.    FrontBridge disclosed MessageOne's confidential and trade secret information to MessageRite.   FrontBridge and MessageRite used that information to create a new e-mail continuity and disaster recovery offering in direct competition with the MessageOne Solution. FrontBridge and MessageRite are now direct competitors of MessageOne, and are continuing to use for their own benefit the confidential information and trade secrets taken from MessageOne.

22    Beginning in or about April, 2005, FrontBridge entered into a series of meetings and discussions with Corporation ("Microsoft").   Those discussions culminated in Microsoft acquiring FrontBridge pursuant to an  Agreement and Plan of Merger dated July 19, 2005 (the "Merger Agreement")

23    During the course of discussions between FrontBridge and Microsoft leading up to the acquisition, FrontBridge disclosed technical and commercial details regarding its new e-mail continuity product, AMC, to Microsoft.  FrontBridge provided a demonstration of the AMC product to Microsoft

24    FrontBridge considered its AMC product to be a "leading differentiator" between it and other companies Microsoft was considering, which did not offer similar e-mail continuity services.

25.    In its Form 10-Q filed with the SEC for the quarterly period ending September 30, 2005, Microsoft lists a gain of goodwill of $178 million associated with its acquisition of FrontBridge.

26.    On information and belief, FrontBridge and MessageRite have, with the aid and assistance of their channel partners, solicited actual and potential customers of MessageOne in order to supplant MessageOne as the supplier of e-mail continuity and disaster recovery goods and services.

6

Exhibit B Page 48

09/10/08   FRI 18 01 FAX 512 7   5520                                                                  ☎008

**10/07/2008 10:44 AM**

27. MessageOne owns the name and mark "MESSAGEONE" ("the Mark"). The Mark is the subject of a federal trademark application for registration, United States Application No. 78/483270, filed September 14, 2004, for the trademark "MESSAGEONE." MESSAGEONE® is a registered trademark owned by MessageOne. The Mark registered on November 22, 2005, for the following services: "Business management services relating to managing electronic messaging systems and applications for others," in International Class 35; and "Computer services, namely, remote and on-site management of electronic messaging systems and applications for others" in International Class 42. MessageOne also owns all common-law rights in the Mark for these goods and services.

28. Further to the efforts of FrontBridge and MessageRite to trade off MessageOne's proprietary technology and the goodwill it has garnered in the industry, FrontBridge and MessageRite used, without authorization of MessageOne, the Mark in their advertising with Google A true and correct copy of a Google search report resulting from searching the term "MESSAGEONE" is attached hereto as Exhibit B. When a user entered "MessageOne" into Google, a banner ad for MessageRite appears. As can be seen from Exhibit B, MessageRite and FrontBridge have levied a campaign of direct attack against MessageOne, wrongfully using its trademarks, trade secrets and confidential information.

## IV. CLAIMS FOR RELIEF

### COUNT I
### FALSE DESIGNATION OF ORIGIN AND
### FALSE REPRESENTATIONS IN COMMERCE

29 MessageOne repeats and realleges the allegations of paragraphs 1-28 as if fully set forth herein.

30. The Mark has been and is recognized by the public and the industry as originating from a single source, namely MessageOne, and the Mark serves to distinguish MessageOne's

Exhibit _B_ Page _49_

09/10/08   FRI 13:01 FAX 512 7   1520                                                      @008

## 10/07/2008 10:44 AM

products and services from those of others.  MessageOne and its predecessors in interest have continuously used the mark in commerce since at least as early as September, 1996.

31.      Through its significant efforts and expense, MessageOne has acquired and enjoys substantial goodwill and a valuable reputation through its distinctive Mark.  The maintenance of high standards of quality and excellence for MessageOne's goods and services has contributed to this valuable goodwill and reputation.

32.      MessageOne has expended and continues to expend a significant amount of time and money to  market, advertise, offer for sale, and promote MessageOne's goods, including its e-mail continuity and disaster recovery goods and services, through its distinctive Mark, including marketing it in trade shows and on its Internet website, www.messageone com.

33      On information and belief, FrontBridge and MessageRite have begun offering e-mail continuity and disaster recovery services in direct competition with MessageOne

34.      On information and belief, Defendants have used Google's "AdWord" program to misdirect customers and potential customers of MessageOne to Defendants.

35      More particularly, Defendants have willfully and intentionally requested Google to include the Mark as a trigger for the sponsorship banner shown in Exhibit B.

36.      Defendants' advertising, offering for sale, selling and promoting e-mail continuity and disaster recovery goods and services under the Mark and/or under a name confusingly similar to the Mark is likely to cause the public to believe that Defendants' goods and services originate with or are sponsored by or affiliated with MessageOne or are offered under MessageOne's supervision or control.

37.      The acts of Defendants complained of above are calculated to deceive the relevant consuming public into accepting and purchasing Defendants' goods and services in the mistaken

AUSTIN 434457v1 53086-00010

Exhibit *B* Page 50

**10/07/2008 10:44 AM**

belief that they are MessageOne's goods and services or that they are sponsored by, connected with, or supplied under the supervision of, MessageOne.

38.     The acts of Defendants complained of above are likely to deceive and cause confusion of the public and constitute infringement of MessageOne's trademark rights.

39.     On information and belief, Defendants' acts have been committed and are being committed with the deliberate purpose and intent of appropriating and trading upon MessageOne's goodwill and reputation

40.     Defendants' actions constitute willful trademark infringement and make this case exceptional under 15 U.S.C. §1117(a)

41.     On information and belief, Defendants have continued to advertise, offer for sale and promote the their similar goods and services in a manner and/or under a name confusingly similar to the Mark.

42.     The foregoing acts of Defendant have caused MessageOne irreparable harm because Defendants' infringement may cause MessageOne to lose control of its own business reputation and goodwill.  Unless enjoined, the acts of Defendants alleged herein will continue to cause MessageOne irreparable harm.  MessageOne has no adequate remedy at law.

43.     Defendants' false designation of origin and false representations in commerce constitute unfair competition under section 43(a)(1)(A) of the Lanham Act (the Trademark Act of 1946, as amended, 15 U S.C. § 1125(a)(1)(A)).

44.     Defendants' unauthorized use of the Mark in commercial advertising or promotion misrepresents the nature, characteristics and qualities of Defendants' goods or services and violates section 43(a)(1)(B) of the Lanham Act.

9

Exhibit △ Page 5 1

**10/07/2008 10:44 AM**

45.     As a result of Defendants' conduct and false designation and representations alleged herein, MessageOne has suffered and is likely to continue suffering substantial damages. Further, Defendants have profited from their wrongful acts at MessageOne's expense. MessageOne is entitled to recover its damages as well as its reasonable and necessary attorneys' fees and costs incurred herein.

46.     On information and belief, Defendants' acts and/or omissions were committed with actual or constructive knowledge of their false and deceptive nature and constitute willful and malicious infringement of MessageOne's rights.  MessageOne is entitled to treble damages on the grounds that Defendants' acts have been willful and wanton.  MessageOne is entitled to an award of its reasonable attorneys' fees on the ground that this case is exceptional in view of the willful and wanton nature of the infringement

47      The foregoing acts of Defendants have caused MessageOne irreparable harm. Unless enjoined, Defendants' acts as alleged herein will continue to cause MessageOne irreparable harm, loss and injury

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**

48      MessageOne repeats and realleges the allegations of paragraphs 1-47 as if fully set forth herein.

49.     MessageOne has developed, at considerable time and expense, proprietary information, processes, methodology, and business information relating to its e-mail continuity and disaster recovery goods and services.

50      MessageOne holds such information as trade secrets and confidential information.

51.     Defendants have misappropriated such trade secrets and confidential information by using and disclosing them without the authorization of MessageOne.

10

Exhibit _B_ Page _52_

52.    MessageOne has suffered damages as a result of Defendants' misappropriation of trade secrets, and will continue to do so until Defendants' wrongful actions are enjoined.

## COUNT III
## THEFT OF TRADE SECRETS

53    MessageOne repeats and realleges the allegations of paragraphs 1-52 as if fully set forth herein.

54.    Pursuant to TEX. CIV. PRAC. & REM CODE §§ 134.001-005 and TEX. PEN. CODE § 31.05.i, it is prohibited if a party, without authorization:  (a)  stole a trade secret belonging to MessageOne;  (b)  made  a  copy  of  an  article  representing  a  trade  secret  belonging  to MessageOne, or (c) communicated or transmitted a trade secret belonging to MessageOne.

55    Defendants have violated the foregoing statutes by stealing MessageOne's trade secrets  for  their  own  use,  copying  documents  containing  MessageOne's  trade  secrets,  and communicating MessageOne's trade secrets to other parties, as alleged above.

56.    MessageOne  has  suffered  damages  as  a  result  of  Defendants'  theft  of  trade secrets, and will continue to do so until Defendants' wrongful actions are enjoined.

57    MessageOne is entitled to recover for damages caused by Defendants' theft and use of MessageOne's trade secrets, as well as recovery of its court costs and reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 134.005.  MessageOne further seeks punitive damages without cap pursuant to the violation of TEX. PEN. CODE § 31.05.i.

## COUNT IV
## COMMON LAW MISAPPROPRIATION

58.    MessageOne repeats and realleges the allegations of paragraphs 1-57 as if fully set forth herein

11

Exhibit B Page 53

**10/07/2008 10:44 AM**

59.    MessageOne has developed, at considerable time, labor, skill and money proprietary information, processes, methodology, and business information relating to its e-mail continuity and disaster recovery goods and services.

60.    Because Defendants did not have to invest time, labor, skill and money in the development, creation, refinement, testing and marketing their competing e-mail continuity service, Defendants obtained an unfair competitive advantage over MessageOne  By this misappropriation, MessageOne has been and will be deprived of the benefits and advantages from its own efforts and Defendants will unfairly benefit from this misappropriation.

61    MessageOne has suffered damages as a result of Defendants' common law misappropriation, and will continue to do so until Defendants' wrongful actions are enjoined.

### COUNT V
### BREACH OF CONTRACT

62.    MessageOne repeats and realleges the allegations of paragraphs 1-61 as if fully set forth herein.

63.    FrontBridge has breached the MOU by disclosing to third parties, including MessageRite, the confidential business information of MessageOne.

64.  .  FrontBridge has breached the MOU by breaching its representation and warranty to MessageOne that the transaction contemplated in the MOU would not interfere with any contractual or other obligations to any third party.

65    All conditions precedent, if any, to MessageOne's right to recover against FrontBridge have been fulfilled, satisfied, or have been waived.

66.    MessageOne has suffered, and will continue to suffer actual damages and irreparable harm as a result of Defendant FrontBridge's actions.

Exhibit B Page 54

**10/07/2008 10:44 AM**

67.     Pursuant to Texas Civil Practice & Remedies Code §38 001, MessageOne is entitled to recover its attorneys' fees incurred in bringing this action because it is based on a breach of an oral or written contract. MessageOne hereby requests its reasonable and necessary attorneys' fees incurred herein.

## COUNT VI
### FRAUD AND FRAUDULENT INDUCEMENT

68.     MessageOne repeats and realleges the allegations of paragraphs 1-67 as if fully set forth herein.

69.     FrontBridge has made material misrepresentations and material omissions of fact to MessageOne  More particularly, FrontBridge misrepresented to MessageOne that FrontBridge did not intend to enter the e-mail continuity business without MessageOne's participation. FrontBridge misrepresented to MessageOne that FrontBridge would keep MessageOne's information confidential, and not use or disclose that information.   FrontBridge further misrepresented and omitted material facts regarding its discussions with MessageRite and its plan with MessageRite to enter into the e-mail continuity business. On information and belief, FrontBridge never intended to enter into a business relationship with MessageOne, but misrepresented its intent to do so in order induce MessageOne to disclose proprietary information to FrontBridge.

70.     Pursuant to the MOU, the confidential relationship between the parties and the circumstances surrounding the parties' discussions, FrontBridge had a legal duty to disclose material facts to MessageOne relating to the business transaction proposed by FrontBridge

71.     MessageOne relied on the foregoing material misrepresentations and omissions by entering into the MOU and disclosing to FrontBridge its confidential information and trade secrets

13

Exhibit _B_ Page _55_

**10/07/2008 10:44 AM**

72.    As a result of the fraud of FrontBridge, MessageOne has suffered damages, and will continue to do so unless such actions are enjoined.

## COUNT VII
## NEGLIGENT MISREPRESENTATIONS

73.    MessageOne repeats and realleges the allegations of paragraphs 1-72 as if fully set forth herein.

74    As alleged above, FrontBridge has made material misrepresentations and material omissions of fact to MessageOne.    More particularly, FrontBridge misrepresented to MessageOne that FrontBridge did not intend to enter the e-mail continuity business without MessageOne's participation.    FrontBridge further misrepresented to MessageOne that FrontBridge would keep MessageOne's information confidential, and not use or disclose that information.    FrontBridge further misrepresented and omitted material facts regarding its discussions with MessageRite and its plan with MessageRite to enter into the e-mail continuity business.

75.    In the alternative to Count VI, FrontBridge made the foregoing misrepresentations negligently.    FrontBridge failed to take reasonable care as to the truth or accuracy of those representations at the time they were made   FrontBridge further failed to take reasonable care to identify or correct those misrepresentations when their untruth became plain to FrontBridge.

76.    Pursuant to the MOU, the confidential relationship between the parties and the circumstances surrounding the parties' discussions, FrontBridge had a legal duty to take reasonable care in its dealings with MessageOne, particularly as relating to the business transaction proposed by FrontBridge.

03/10/08   FRI 18:03 FAX 512   3520                                    ☑016

**10/07/2008 10:44 AM**

77.    MessageOne relied on the foregoing material misrepresentations and omissions by entering into the MOU and disclosing to FrontBridge its confidential information and trade secrets

78.    As a result of the negligent misrepresentations of FrontBridge, MessageOne has suffered damages.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH ACTUAL AND**
**PROSPECTIVE BUSINESS RELATIONS**

79    MessageOne repeats and realleges the allegations of paragraphs 1-78 as if fully set forth herein.

80.    Defendants and their channel partners have approached MessageOne's customers and potential customers, soliciting their business to the exclusion of MessageOne

81.    Through taking the actions complained of herein, Defendants (including through their channel partners) have actively and knowingly interfered with the actual and prospective business relations between MessageOne and its customers and potential customers.

82.    As a consequence of the wrongful interference by Defendants, MessageOne has suffered damages, and will continue to do so until Defendants' wrongful interference is enjoined

**COUNT IX**
**BREACH OF IMPLIED DUTY OF**
**GOOD FAITH AND FAIR DEALING**

83.    MessageOne repeats and realleges the allegations of paragraphs 1-82 as if fully set forth herein.

84.    The MOU is governed by California law pursuant to its terms.  California law implies a covenant of good faith and fair dealing in all such contracts.

85.    FrontBridge violated the implied covenant of good faith and fair dealing contained in the MOU by executing the MOU with no intent to abide by its terms.

15

Exhibit _B_ Page 57

**10/07/2008 10:44 AM**

86.   FrontBridge violated the implied covenant of good faith and fair dealing contained in the MOU by failing to take adequate steps to fulfill its obligations under the MOU

87.   FrontBridge violated the implied covenant of good faith and fair dealing contained in the MOU by inducing MessageOne to impart its confidential information and trade secrets while secretly negotiating with another party and conspiring to offer goods and services in competition with MessageOne.

88.   As a consequence of FrontBridge's having violated the implied covenant of good faith and fair dealing contained in the MOU, MessageOne has suffered damages and will continue to do so unless such violations are enjoined by this Court.

## COUNT X
## COMMON LAW UNFAIR COMPETITION

89   MessageOne repeats and realleges the allegations of paragraph 1-88 as if fully set forth herein

90.   FrontBridge has unfairly competed in the marketplace by making false representations regarding their goods and services.  Such false misrepresentations have damaged MessageOne and unjustly enriched FrontBridge.

91   FrontBridge has unfairly competed in the marketplace by making knowingly false representations regarding their goods and services to customers and potential customers   Such false misrepresentations have damaged MessageOne and unjustly enriched FrontBridge.

92   The aforementioned conduct of FrontBridge was undertaken willfully.

## COUNT XI
## CLAIM FOR CIVIL CONSPIRACY

93.   MessageOne repeats and realleges the allegations of paragraph 1-92 as if fully set forth herein.

# 10/07/2008 10:44 AM

94.    The Defendants together formulated a plan and conspired to engage in the wrongful acts described above.

95    More specifically, the Defendants planned to and did create an e-mail continuity product and service to compete with the e-mail continuity product and service of MessageOne, notwithstanding the confidential relationship between FrontBridge and MessageOne, and using MessageOne's confidential and trade secret information.

96.    The Defendants carried out this plan, knowingly causing damage to MessageOne.

97.    The aforementioned conduct of the Defendants was undertaken willfully and with knowledge of the planned conduct by each of the Defendants.

## COUNT XII
## PUNITIVE DAMAGES

98.    MessageOne repeats and realleges the allegations of paragraph 1-97 as if fully set forth herein.

99.    Defendants' conduct was willful, wanton and in reckless disregard of the rights of MessageOne, for which the law allows the imposition of punitive and exemplary damages.

100.    MessageOne is entitled to recover from Defendants, jointly and severally, punitive and exemplary damages in an amount to be determined by the trier of fact.

## COUNT XII
## FRAUDULENT TRANSFER/CONSTRUCTIVE TRUST

101.    MessageOne repeats and realleges the allegations of paragraphs 1-100 as if fully set forth herein.

102.    Pursuant to the Merger Agreement between FrontBridge and Microsoft, certain funds are to be held in escrow for indemnification of claims, including MessageOne's lawsuit against FrontBridge    Accordingly, on August 30, 2005, FrontBridge, by and through its stockholder representatives, entered into an escrow agreement with Microsoft Corporation (the

17

Exhibit ℬ Page 59

**10/07/2008 10:44 AM**

"Escrow Agreement"). Under the terms of the Escrow Agreement, Microsoft deposited those funds with a custodian.

103    Pursuant to the Escrow Agreement, on or about August 31, 2006, the custodian will release the majority of the escrow amount for distribution to FrontBridge's stockholders. This case is set for trial in November, 2006

104.    The distribution of these funds pursuant to the terms of the Escrow Agreement constitutes a fraudulent transfer pursuant to the Chapter 24 of the Texas Business and Commerce Code  *See* Bus. & Com. Code §24.001 *et. seq.*  Specifically, FrontBridge is answerable to a judgment entered in this lawsuit in favor of MessageOne  The distribution of this money to FrontBridge's stockholders may (depending on the outcome of this litigation) intentionally delay, hinder or defraud MessageOne from obtaining full satisfaction of a judgment against FrontBridge  This arrangement, wherein a large portion of the escrowed funds are distributed to FrontBridge's stockholders, was consummated with FrontBridge's full knowledge of MessageOne's claims and the potential need to satisfy a judgment.

105.    The transferees, FrontBridge's stockholders, are "Affiliates" and/or "Insiders" as those terms are defined in Chapter 24 of the Texas Business and Commerce Code

106.    To the extent that the Court enters a judgment against FrontBridge, MessageOne seeks a ruling that money disbursed to FrontBridge's stockholders during the pendency of this suit that is currently held in escrow pursuant to the Merger Agreement was distributed in violation of TEX. BUS. & COM. CODE §24.001 *et seq.*, and must be returned to FrontBridge to fully satisfy any judgment obtained by MessageOne.

107    Moreover, in view of the foregoing, the escrow funds are being held in constructive trust by FrontBridge and its officers, agents and shareholders during the pendency

18

Exhibit  B  Page 60

03/19/08  FRI 13:04 FAX 512     3520                                          @020

**10/07/2008 10:44 AM**

of this lawsuit for the benefit of MessageOne and satisfaction of any judgment against FrontBridge.

## V. JURY DEMAND

108.    MessageOne demands a trial by jury on all matters so triable

## VI. REQUEST FOR RELIEF

WHEREFORE, MessageOne prays for the following relief.

(i)    that Defendants, upon being served with process, be required to answer in the time and manner prescribed by law;

(ii)    that Defendants, their respective agents, servants, employees, contractors, and all persons, firms, corporations or entities acting under their direction, authority or control and all those in active concert and participation with them who receive notice of the Order be enjoined from misappropriating MessageOne's trade secrets; from infringing MessageOne's trademarks; from interfering with its actual and prospective business relations; and from engaging in all acts of unfair competition as described above;

(iii)    that MessageOne be awarded damages in an amount to be determined at trial in connection with Defendants' acts of trademark infringement, misappropriation of trade secrets, breach of contract, fraud, tortuous interference, unfair competition and civil conspiracy;

(iv)    that this case be declared exceptional under 15 U.S.C §1117;

(v)    that Defendants be ordered to pay MessageOne's reasonable attorneys' fees and costs;

(vi)    that MessageOne be awarded exemplary and punitive damages based on Defendants' willful and wanton conduct;

(vii)    that MessageOne be awarded its prejudgment and post judgment interest for all amounts recoverable herein;

19

AUSTIN 434457v1 53086-00010

Exhibit B Page 61

**10/07/2008 10:44 AM**

(viii)  that any money disbursed to FrontBridge's stockholders that was held in escrow pursuant to the Merger Agreement was distributed in violation of TEX. BUS. & COM. CODE §24.001 *et seq.*, and must be returned to FrontBridge to satisfy fully the judgment obtained by MessageOne, and

(ix)  that MessageOne have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled

Respectfully submitted,

By: _____

Gary E. Zausmer
Texas Bar No. 22251350
Andrew G. DiNovo
Texas Bar No. 00790594
**JENKENS & GILCHRIST, P.C.**
401 Congress Avenue, Suite 2500
Austin, Texas 78701
Tel · (512) 499-3812
Fax: (512) 499-3810

Leslie G. Fagen
Andrew G. Gordon
Gary R. Carney
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel  (212) 373-3000
Fax: (212) 757-3990

ATTORNEYS FOR PLAINTIFF
MESSAGEONE, INC.

10/07/2008 10:44 AM

## CERTIFICATE OF SERVICE

    I certify that on the _10_ day of March, 2006, a true and correct copy of the foregoing document was sent via facsimile and first class mail to the following counsel of record:

Alan D Albright
John M. Bustamante
FISH & RICHARDSON, PC
One Congress Plaza
111 Congress Avenue, Suite 810
Austin, Texas 78701
Tel: (512) 226-8106
Fax: (512) 320-8935

Andrew G. DiNovo

21

Exhibit _B_ Page _63_

03/10/08   FRI 18:05 FAX 512   3520                                               ☒023

**10/07/2008 10:44 AM**

## FRONTBRIDGE TECHNOLOGIES, INC.
### MessageOne Memorandum of Understanding

MessageOne
Re: Potential Reseller Relationship

To:

This memorandum of understanding outlines the terms and conditions for FrontBridge Technologies ("FrontBridge") participation in the MessageOne ("Company") Reseller Program ("Program").

WHEREAS FrontBridge and Company (the "Parties") have entered into negotiations to develop a business relationship.

NOW THEREFORE the parties mutually agree that the MOU will be as detailed below:

1  Material Terms
   a   Term of Reseller Relationship Contemplated. Three (3) years;
   b   Discount Structure: 50% of published list price, as of April 1, 2004 (a copy of which is attached as Exhibit A, herein. The Parties acknowledge that this price term is subject to market conditions, and to FrontBridge's ability to resell Company's products and services through their channels, at a maximum of 1.2x List Price,
   c.  Pre-Payment on Future Business:
       o  Total of US$240,000 yearly, paid in quarterly payments of US$60,000, for a period of three (3) years;
       o  If yearly commitment fund is not used completely in the calendar year it is paid, it will be rolled-over to subsequent years
       o  Roll-over funds shall be used against total commitment needs, but shall not relieve FrontBridge from the quarterly payment obligations.
   d.  Private Labeling shall be available for FrontBridge and for Selected FrontBridge Partners (example: Sprint,) as may be mutually agreed-upon, in writing, by the Parties;
   e   MessageOne shall participate in a mutually agreed upon marketing program, with MDF funds to be applied. The Parties agree that such program shall be subject to a mutually agreed upon substantive document, which shall be negotiated in good faith as the Parties elect,

Additional Terms
   a.  General Reseller Agreement Terms & Conditions to be negotiated in good faith among the Parties, in the definitive agreement

II. Timing. It is contemplated that FrontBridge and the Company will be prepared to execute the definitive Reseller Agreements within fifteen (15) forty-five (45) days after the execution of this Memorandum of Understanding by both parties.

III. Termination. Should the Reseller Agreement not be approved and signed within fifteen (15) forty-five (45) days after the execution of this MOU, either party may terminate this MOU by written notification. The Parties may also elect to extend this MOU, by mutual written consent, for a period as is necessary to complete the substantive agreements.

IV. Certain Representations and Warranties. Each party represents and warrants to the other that neither the matters set forth in this MOU, nor the consummation of the transaction contemplated herein, will breach or interfere with any contractual or other obligations to any third party. Each hereby

Exhibit B Page 64        **EXHIBIT A**

**10/07/2008 10:44 AM**

unconditionally agrees to indemnify and hold harmless the other and their respective officers, directors, employees and agents from and against any and all liability, claim, injury, damage, cost or expense of any kind, including reasonable attorney's fees, directly or indirectly related to, associated with or arising out of any breach of representation and warranties contained in this paragraph

V. Non-Disclosure. Except as required by law or in response to a request for information by regulatory or judicial authorities having jurisdiction over the applicable party, the parties to this MOU will not disclose to any third party the terms of the proposed transaction or the nature of our discussions, or our respective businesses without the prior written permission of both the Company and FrontBridge, other than any such information which becomes publicly available without violation of the terms hereof provided however that neither party is precluded by this MOU from confidential discussions with its stockholders key employees, legal counsel, accountants, and other agents reasonably deemed necessary by each party, respectively, in order to facilitate the transaction contemplated hereby;

VI. Effect. By executing this MOU, the parties confirm their mutual intentions as specified herein, but except for the matters set forth in Paragraphs II, III, IV and V above and this Paragraph VI (which matters are acknowledged to constitute binding and enforceable commitments to which the parties intend and agree to be legally bound), this MOU is not and is not intended to constitute a contract, nor an offer to enter into a contract, nor is it intended to be binding upon either of the parties or upon any other person to create any legal or equitable obligations or rights. Neither party shall rely on any oral or written representation of this MOU (other than as expressly contemplated hereby) This MOU shall be interpreted and enforced under the laws of the State of California.

Please indicate your acceptance of and agreement to the terms and conditions of this memorandum of Understanding by signing and returning the enclosed copy of this Agreement.
THE SIGNATURES BELOW INDICATE THAT THE COMPANY AND FRONTBRIDGE UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT AND THAT THE COMPANY REPRESENTATIVE HAS THE AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF THE COMPANY
THE PARTIES BELOW HAVE EXECUTED THIS AGREEMENT TO BE EFFECTIVE AS OF THE LATEST DATE WRITTEN BELOW

Agreed to and accepted to by:

MESSAGE ONE

By _Muchandani_

__SAJIN H. MIRCHANDANI__
(Typed or Printed Name)

__CEO__
(Title)
__4/6/2004.__
(Date)

FRONTBRIDGE TECHNOLOGIES

By: _____

__STEVE JILLINGS.__
(Typed or Printed Name)

__CEO__
(Title)
__4/6/04__
(Date)

2

03/10/06 FRI 18 05 FAX 512 3520 ☐025

**10/07/2008 10:44 AM**

Google Search: messagone ...

File Edit View Favorites Tools Help

Back Forward Stop Refresh Home

Address http://www.google.com/search?hl=en&q=messagone

Google

[ messagone ]

[Search] [Advanced Search] [Preferences]

Web   Images   Groups   News   Froogle   more »

Web   Results 1 - 10 of about 3,660 for messagone. (0.16 seconds)

**Business Continuity Disaster Recovery Solutions from MessageOne**
Business Continuity Disaster Recovery Solutions from MessageOne. ... Business Continuity
and Disaster Recovery Solutions from MessageOne™. ... MessageOne, 2004. ...
www.messageone.com/ - 8k - Oct 27, 2004 - Cached - Similar pages

**Business Continuity and Disaster Recovery Products from MessageOne**
Business Continuity Disaster Recovery Solutions from MessageOne. ... Business Continuity
and Disaster Recovery Products from MessageOne. ... MessageOne, 2004 ...
www.messageone.com/products/ - 9k - Oct 27, 2004 - Cached - Similar pages
[ More results from www.messageone.com ]

**MessageOne acquires Evergreen Assurance - Computerworld**
... Disaster Recovery.. MessageOne acquires Evergreen Assurance The move is designed to
bolster MessageOne's e-mail disaster recovery line, ...
www.computerworld.com/securitytopics/ security/recovery/story0,10801,96794,00.html - 60k
- Oct 27, 2004 - Cached - Similar pages

**MESSAGEONE EXPANDS BUSINESS CONTINUITY OFFERINGS WITH ACQUISITION ...**
... MESSAGEONE EXPANDS BUSINESS CONTINUITY OFFERINGS WITH ACQUISITION OF
EVERGREEN ASSURANCE TECHNOLOGY MessageOne (www.messageone.com), the
leading provider of ...
www.windowsfs.com/news_summary.asp?article=1914 - 34k - Cached - Similar pages

**MessageOne delivers new emergency notification services**
Friday 2 July 2004 MessageOne delivers new emergency notification services E-mail
disaster recovery supplier MessageOne is adding ...
www.computerweekly.com/Article137142.htm - 62k - Cached - Similar pages

Sponsored Links

**Email Disaster Recovery**
MessageXtra realtime offsite email
archiving adds DR to mail systems
www.MessageXtra.com

See your message here.

EXHIBIT B

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| HOUSTON CASUALTY COMPANY | JEFF DRAZAN, RORY O'DRISCOLL and FRONTBRIDGE TECHNOLOGIES, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| TROUTMAN SANDERS LLP<br>Terrence R. McInnis, Bar No. 155416<br>Ryan C. Tuley, Bar No. 198249<br>5 Park Plaza, Suite 1400, Irvine, CA 92614<br>Tel: (949) 622-2700; Fax: (949) 622-2739 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** Declaratory Relief

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Declaratory Relief; Diversity under 28 U.S.C. section 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____    **CV09   06978**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Texas |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Flynn C. Tuley_     Date  9/24/09

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com